The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Shuping. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award.
****************
The Full Commission finds as fact and concludes as matters of law the following:
Prior to hearing the parties not only entered into a Pre-Trial Agreement, which is hereby incorporated by reference as if fully set out herein and where they agreed to certain jurisdictional stipulations, but deposed Drs. McDeavitt and Roberson. By subsequent Order thereof the parties were allowed a reasonable period of time to obtain the deposition testimony of an unavailable lay witness, Mark Mayo, and have not only since deposed the involved witness, but submitted Statements of Contention.
****************
The Full Commission adopts the findings of fact found by the Deputy Commissioner as follows:
FINDINGS OF FACT
1. Plaintiff is a 46 year-old married male. For the last three and a half years he has been employed by defendant Trane Service Parts and despite the significant head injury sustained has been able to return to work in the same capacity.
2. On the morning of the November 6, 1993 date in question, plaintiff and Mark Mayo, a maintenance technician, were pulling computer cable in the premises impeller cell room; while Leon Beatty, the head maintenance electrician, and J. R. Deese, another maintenance technician and plaintiff's assailant, were installing electrical equipment in an adjacent room. The four had been working together for some time and ordinarily took their breaks together; however, plaintiff and J. R. Deese had no contact with one another outside of work.
3. At approximately break time during a lull in the work that same morning plaintiff and Mark Mayo went to the adjacent room where Leon Beatty and J. R. Deese were working in order that plaintiff could show them a gold bracelet he had recently purchased. While in there they began joking around about a pair of Dale Earnhart sunglasses that were hanging on a piece of conduit, which Mr. Deese claimed were his. The others then began teasing Mr. Deese about whether the sunglasses were his or not and were accustomed to similarly joking around with one another at work. Unfortunately what began as friendly teasing about the ownership of the pair of glasses turned ugly when Mr. Deese began getting more and more angry about the teasing and Mr. Deese ultimately picked up a pipe bender striking plaintiff in the left side of the head fracturing his skull when he said one thing too many.
4. The involved skull fracture not only occurred in the course of plaintiff's employment because it occurred on the premises during regular work hours while he and three other employees that were accustomed to working with one another and ordinarily took their breaks together were joking around with each other during a lull in the work at approximate break time; but arose out of the employment because they were accustomed to similarly joking around with one another, plaintiff and his assailant had no contact with one another outside of the employment, the teasing related to something that was connected with their work in the form of the pair of Dale Earnhart sunglasses belonging to Mr. Deese as opposed to being something totally personal or foreign to the work or dealing with matters arising outside of the work situation where plaintiff and Mr. Deese had no contact at all and because of the resulting risk that this type of good natured teasing between men at work would cause someone to lose their temper and become violent as Mr. Deese did.
5. As a result of the same injury plaintiff was totally incapacitated during the period from November 6, 1993 to December 8, 1993 when he was able to return to his regular maintenance electrician's job despite his serious head injury.
6. Although he has made a remarkable recovery; plaintiff has sustained a residual permanent deficit from his head injury and resulting nerve cell damage; however, the same deficit cannot be quantified without the type of neuro-psychological testing described in Dr. McDeavitt's testimony. Because plaintiff had made rapid improvement from his head injury, was functioning well, able to return to his regular maintenance electrician's job and neither he nor his wife then had any complaints; Dr. McDeavitt did not initially recommend neuropsychological testing or further treatment.
7. One of the attendant risks of such a head injury is that plaintiff would develop seizures and as a result was placed on prophylactic anti-convulsive medication. Another is that he would develop marked personality changes due to his inability to cope with his cognitive deficits and resulting behavioral deterioration potentially requiring him to undergo long term counseling.
8. Since his release from Dr. McDeavitt's care plaintiff has not only experienced one seizure, but a marked personality change and as a result needs to return to Dr. McDeavitt for further evaluation and/or treatment, including as part thereof, neuro-psychological testing to determine the potential cause of his problems and an appropriate course of treatment.
9. Although the brain is undoubtedly an important internal organ or part of the body for which compensation is not otherwise payable under the provisions of G.S. 97-31(1-23 et seq) and plaintiff has sustained a permanent brain injury as a result of the injury by accident giving rise hereto entitling him to an award of compensation under the provisions of G.S. 97-31(24); a determination as to the exact nature and extent of his permanent injury cannot be made until plaintiff returns to Dr. McDeavitt for evaluation and/or treatment, including as part thereof undergoing neuro-psychological testing, nor should it be.
****************
Based upon the findings of fact, The Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On November 16, 1993 plaintiff sustained an injury by accident arising out of and in the course of his employment and as a result thereof was temporarily totally disabled during the period from November 6, 1993 to December 8, 1993 entitling him to compensation at a rate of $395.42 per week during the same period. G.S. 97-2(6), Withers vs. Black, 230 N.C. 428
(1949).
2. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants are obligated to pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, including returning to Dr. McDeavitt for evaluation and/or treatment, and as part thereof undergoing neuro-psychological testing.
3. Pending a re-evaluation and/or treatment by Dr. McDeavitt, including as part thereof neuro-psychological testing, any award of compensation benefits that plaintiff would otherwise be due for his head injury under the provisions of G.S. 97-31(24) is deferred for the reasons described in the about Findings of Fact.
****************
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms the holding of the Deputy Commissioner and enters the following:
AWARD
1. Defendants shall pay plaintiff, on account of his temporary-total disability, compensation at a rate of $395.42 per week during the period from November 6, 1993 to December 8, 1993. Such compensation having accrued the same shall be paid in lump sum, without commutation. Because of the small amount of compensation presently paid, an award of attorney's fees for plaintiff's counsel is deferred pending a final award of compensation under the provisions of G.S. 97-31(24) after plaintiff returns to Dr. McDeavitt for additional evaluation and/or treatment.
2. To the extent the same are reasonably designed to tend to effect a cure of, provide needed relief from and/or lessen the period of disability associated therewith defendants shall pay all reasonable and necessary medical expenses incurred by plaintiff as a result of the injury by accident giving rise hereto, including returning to Dr. McDeavitt for re-evaluation and/or treatment and as part thereof neuropsychological testing, when bills for the same are submitted on proper forms, through defendant-carrier, to the Industrial Commission for approval and are approved by the Commission.
3. Defendants shall bear the costs.
4. IT IS FURTHER ORDERED that this matter be REMOVED from the active hearing docket pending plaintiff undergoing evaluation and/or treatment by Dr. McDeavitt and psychological testing, at which time the parties shall have 60 days to obtain, either by deposition at defendants expense or stipulated report, the medical evidence necessary for a final award to be entered determining the compensation due plaintiff for his permanent head injury pursuant to the provisions of G.S. 97-31(24).
 S/ ___________________________ MARY MOORE HOAG DEPUTY COMMISSIONER
CONCURRING:
S/ ___________________________ J. HOWARD BUNN, JR. CHAIRMAN
S/ ___________________________ J. RANDOLPH WARD COMMISSIONER
MMH:db